1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TAIDE MUNGUIA,                              No.  2:11-cv-2082 KJN P

12              Petitioner,

13        v.                                     ORDER

14   RANDY GROUNDS,

15              Respondent.

16

17   I.  Introduction

18        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Both parties consented to proceed before the

20   undersigned for all purposes.  See 28 U.S.C. § 636(c).

21        Petitioner challenges his 2007 conviction on charges of robbery of an inhabited house and

22   assault with a deadly weapon.  The jury also found true that petitioner used a gun.  Petitioner was

23   sentenced to 16 years in state prison.  Petitioner claims that he received ineffective assistance of

24   trial and appellate counsel, and was denied the right to cross-examine witnesses, in violation of

25   the Sixth Amendment; and that his Eighth Amendment rights were violated because his sentence

26   is illegal and cruel and unusual.  After careful review of the record, this court concludes that the

27   petition is denied.

28   ////

1

1  II. <u>Procedural History</u>

2          On April 3, 2007, petitioner was convicted in Sacramento County Superior Court of first

3  degree robbery of an inhabited house in concert, and assault with a deadly weapon, and the jury

4  found true that one of the principals was armed with a firearm, and that petitioner personally used

5  a gun. (ECF No. 1 at 23.) He was sentenced to a term of sixteen years in state prison. (ECF No.

6  1 at 1.)

7          Petitioner filed an appeal, and on October 20, 2009, the California Court of Appeal, Third

8  Appellate District, affirmed the conviction. (ECF No. 1 at 81-95.) On appeal, petitioner raised an

9  insufficiency of the evidence claim, and four claims that the trial court erred by refusing to

10  instruct on grand theft as a lesser included offense of robbery; by conducting a hearing on

11  aggravating factors; by not awarding presentence credits; and by making clerical errors in

12  petitioner's abstract of judgment. (ECF No. 1 at 82.)

13          Petitioner did not file a petition for review in the California Supreme Court.

14          On June 21, 2010,[1] petitioner filed a petition for writ of habeas corpus in the Sacramento

15  County Superior Court, raising the five claims contained in the federal petition. On August 22,

16  2010, the superior court denied the ineffective assistance of counsel claims on the merits, but

17  found that petitioner failed to raise his remaining claims on appeal, citing In re Harris, 5 Cal. 4th

18  813, 833 (1993). (ECF No. 1 at 100.) The superior court found that the remaining claims failed

19  to state a prima facie claim for relief, citing People v. Duvall, 9 Cal. 4th 464, 474 (1995). (ECF

20  No. 1 at 100.) Finally, the superior court found that petitioner's sentence was within the

21  permitted range provided by the California Penal Code, that it was not disproportionate, and did

22  not violate the Eighth Amendment. (ECF No. 1 at 100-101.)

23          On September 9, 2010. petitioner filed a petition for writ of habeas corpus in the

24  California Court of Appeal, Third Appellate District, raising the same five claims. On September

25  16, 2010, the petition was denied without comment. (ECF No. 1 at 103.)

26  _____

27  [1]  The court takes judicial notice of petitioner's records in the state courts, available at
    http://www.saccourt.ca.gov, and http://appellatecases.courtinfo.ca.gov. See Smith v. Duncan,
    297 F.3d 809, 815 (9th Cir. 2002) (courts may take judicial notice of relevant state court records
28  in federal habeas proceedings).

On September 23, 2010, petitioner raised the same five claims in a petition for writ of habeas corpus filed in the California Supreme Court, which was denied without comment on April 20, 2011.  (ECF No. 1 at 105.)

Petitioner filed the federal petition on August 5, 2011.  (ECF No. 1.)

III.  Facts[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

A

The Prosecution

Tillman was married to the victim, K., for three to four years. Their marriage ended in July 2005, but the two still talked and spent time together at K.'s house.

Around 10:30 p.m. on December 9, 2005, Tillman telephoned K. and asked to come over. K. agreed. When Tillman arrived, K. locked the door behind them. The two then "got into a little argument like [they] always d[id]," and K. went back into the bedroom "to get away from the arguing."

While K. was in the back of the house, Tillman called to him from the hallway bathroom, asking for toilet paper. As K. entered the bathroom, he was "jumped" and beaten by three perpetrators - one white man (whose name K. later learned was Gino) and two Hispanic men (one of whom was Munguia). Gino "was doing most of the beating" and the Hispanic men "were holding [K.] down." K. asked Tillman to make them stop. Whenever he tried to speak with her, "she would hit him and tell him to shut up."

The perpetrators dragged K. to the living room and continued to beat him. They retrieved three firearms K. had in the house, including a loaded .357 revolver. Gino had the revolver, and the Hispanic men had the two other firearms. Tillman knew about the revolver because K. had shown it to her "a long time before this had happened." Gino reentered the living room and "constantly" pointed the revolver at K., "pistol whipped" him in the forehead, cut his neck with a knife, and continued beating him while the Hispanic men held him down. Tillman "was sitting there watching it happen."  She and the two Hispanic men used a sheet to cover up a window inside the house so nobody could see inside. Tillman also cut the telephone line.

---

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Tillman, et al.</u>, No. C056509 (October 20, 2009), a copy of which was lodged by respondent as LD 1 on August 23, 2012.

The perpetrators moved K. to a chair in the dining room while they searched through his belongings for four to five hours. Tillman sat on a chair across from K. One of the perpetrators brought K.'s wallet to Tillman, and she took two credit cards out of it.

Eventually, "they" told K. to sit on the couch, and K. complied. Munguia held the rifle "for a little while." About 15 minutes later, "it got real quiet," and K. left for his neighbor's house to call police. On his way out, he noticed his PT Cruiser and red truck were missing.

Sheriff deputies arrived at the house around 5:00 a.m. on December 10. They conducted an in-field showup, where K. identified Tillman as his ex-wife who "assaulted him and kept him in his house" and Munguia as one of the Hispanic men who was in his house who "had assaulted him." Tillman had blood on her hands and Munguia had even more on his hands.

About six weeks after the incident, K. and Tillman resumed their relationship. He visits her while she is incarcerated, puts money on her books, and has paid for her legal defense.

At trial, K. testified to a version of events somewhat favorable to Tillman, including that Tillman did not hit him and did not help in putting up the sheets. He was impeached by contradictory statements he gave to police on the morning of the attack. K. did, however, testify that at no point during the attack did Tillman appear frightened or in fear of her life and it never seemed as though she was being held hostage.

B

Tillman's Defense

Tillman testified on her own behalf. On the night and morning K. was attacked, she was under the influence of methamphetamine. She, Munguia, another Hispanic male, and Gino went to K.'s house to retrieve her belongings. She went in first, K. locked the front door, and she later let the others in. When Tillman was in the bathroom, Gino attacked K. Gino and one of the Hispanic men dragged defendant to the living room. Gino "seemed to just be in control of everything," and Tillman thought he was the "scariest thing . . . ever." Tillman was frightened and "didn't know what to do." She did not strike or kick K. She did not help hang sheets over a window. She never intended for the perpetrators to beat or attack K.

C

Munguia's Defense

Munguia testified on his own behalf. He, another Hispanic man, Tillman, and Gino went to K.'s house to retrieve Tillman's furniture. Tillman went inside the house by herself, and 5 or 10 minutes later Gino went inside. Thereafter, Munguia heard sounds of struggle. He went inside to investigate and saw Gino hitting K. in the

4

bathroom. Munguia did not know what to do. Gino and the other Hispanic man took K. to the living room and told him that nothing would happen to him if he cooperated. Munguia did not leave the house because he was "confused" and "didn't know what to do." He ended up holding one of the guns and "held it just like they told [him] to because [he] was scared that they would do something against [him]." He never pointed the gun at K. He believed that if he ran, Gino would shoot him. He ended up with K.'s credit cards because Tillman gave them to him. He had K.'s blood on his hands because Gino told him to clean up the blood stains on the carpet.

(People v. Tillman, slip op. at 2-5.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003).  Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at a different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

1    Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court

2    may grant the writ if the state court identifies the correct governing legal principle from the

3    Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

4    case. Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal habeas court "may not issue the

5    writ simply because that court concludes in its independent judgment that the relevant state-court

6    decision applied clearly established federal law erroneously or incorrectly. Rather, that

7    application must also be unreasonable." Id. at 412; see also Lockyer, 538 U.S. at 75 (it is "not

8    enough that a federal habeas court, in its independent review of the legal question, is left with a

9    'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state

10   court's determination that a claim lacks merit precludes federal habeas relief so long as

11   'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

12   Richter, 131 S. Ct. 770, 786 (2011).

13   The court looks to the last reasoned state court decision as the basis for the state court

14   judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision,

15   "and the state court has denied relief, it may be presumed that the state court adjudicated the

16   claim on the merits in the absence of any indication or state-law procedural principles to the

17   contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing

18   that "there is reason to think some other explanation for the state court's decision is more likely."

19   Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

20   "When a state court rejects a federal claim without expressly addressing that claim, a

21   federal habeas court must presume that the federal claim was adjudicated on the merits – but that

22   presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.

23   1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a

24   federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de

25   novo review of the claim. Johnson, 133 S. Ct. at 1097.

26   Where the state court reaches a decision on the merits but provides no reasoning to

27   support its conclusion, the federal court conducts an independent review of the record.

28   "Independent review of the record is not de novo review of the constitutional issue, but rather, the

6

1   only method by which we can determine whether a silent state court decision is objectively

2   unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

3   decision is available, the habeas petitioner has the burden of "showing there was no reasonable

4   basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.  "[A] habeas court must

5   determine what arguments or theories supported or, . . . could have supported, the state court's

6   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

7   arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

8   786.

9   V.  Petitioner's Claims

10       A.  Ineffective Assistance of Trial Counsel

11       Petitioner provided the following laundry list of what he claims trial counsel "did or failed

12   to do" that constitutes ineffective assistance of counsel:  (1) counsel's acts or omissions deprived

13   petitioner of an adjudication of a crucial or potentially meritorious defense; (2) counsel's claim

14   that his strategy and tactics were based on a reasonable investigation were not true; and counsel's

15   statements during the hearing pursuant to People v. Marsden, 2 Cal.3d 1118 (1970), were not

16   true, for example, that counsel could not call co-defendants to testify for or against petitioner,

17   even though they had exculpatory evidence that would exonerate petitioner; (3) counsel failed to

18   put Harriet Tillman on the stand on the grounds that her testimony was prejudicial and he did not

19   want to create a conflict with co-defendant's counsel; (4) counsel failed to investigate and to

20   establish at trial that the victim wanted to change some of his statements made to the police, and

21   when the victim took the stand, counsel failed to cross-examine and explore statements that were

22   not true; (5) counsel failed to establish at trial that co-defendant Duran could have exculpatory

23   testimony that could have exonerated petitioner, and when Duran was in court, trial counsel failed

24   to cross-examine him; (6) counsel failed to call defense investigator Lori Brown to the stand, and

25   failed to present her discoveries made during her investigation; (7) counsel failed to disqualify

26   himself when petitioner asked the court to relieve trial counsel as counsel of record, and

27   "presented an argument to the trial court that petitioner was confused and would not understand

28   that even if he was not guilty of the allegation, that they could get him for aiding and abetting in

the crime;" and (8) counsel permitted the judge and the prosecution to file unlawful allegations of aggravating circumstances to illegally sentence petitioner.  (ECF No. 1 at 21.)

In the appended narrative portion of his petition, petitioner includes the following arguments concerning his ineffective assistance of counsel claims:  First, petitioner challenges the investigation of defense investigator Lori Brown, claiming that her investigation first pointed the finger at co-defendant Duran as the Hispanic who assaulted the victim, but "as indicated by defense counsel, . . . petitioner did not understand or misinterpreted the interview with Ms. Brown.  That she meant to say something else and did not present any of the investigation she had conducted at the early stage of the case."  (ECF No. 1 at 12.)  Second, petitioner claims counsel was ineffective at sentencing because he failed to argue mitigating factors for lenient sentencing. Petitioner contends the probation officer's report "states facts that were never recorded or documented" that were "favorable to petitioner" but counsel failed to present such evidence. (ECF No. 1 at 12.)  Petitioner argues that the probation report shows that Tillman and petition did not inflict any of the injuries, which counsel allegedly failed to argue.  Petitioner contends that the victim said that petitioner did not inflict any injuries on him or threaten him with the gun, and told the probation officer that the victim intended to appear at petitioner's sentencing and "make a statement on behalf of [petitioner]."  (ECF No. 1 at 14.)  Petitioner argues that counsel failed to raise such facts before the sentencing judge.  Third, petitioner contends that counsel would not make motions because he knew petitioner was guilty.  (ECF No. 1 at 16.)  Petitioner argues that co-counsel would make motions on behalf of their defendants, and petitioner's counsel would just "join in."  (ECF No. 1 at 16.)

Respondent counters that petitioner's vague and conclusory allegations fail to demonstrate that the state courts' rejection of these claims was objectively unreasonable.  (ECF No. 18 at 29.)

The last reasoned rejection of this claim is the decision of the Sacramento County Superior Court on petitioner's first petition for writ of habeas corpus filed in state court.  The state court addressed this claim as follows:

////

////

8

Petitioner alleges that his trial counsel was ineffective for a variety of reasons. Each claim fails for the reasons described below.

Petitioner contends that his counsel was ineffective because he could not call the fourth participant in the robbery, a Caucasian man named either "Gino" or "Mike," to testify at trial, whom petitioner alleges was primarily responsible for beating the victim. The reason for this explanation is simple: the fourth participant could not be identified or located. First, it appears that he left the scene of the crime before police arrived, and he was never identified or charged. As petitioner's counsel explained to the court, an investigator was assigned to petitioner's case who spoke with petitioner and the victim, neither of whom could identify the individual in any manner that would enable him to be located. Petitioner has not shown that his attorney's investigation fell below an objective standard of reasonableness, particularly when petitioner was only able to describe the man in very general terms.

Petitioner argues that his counsel should have made co-defendant Tillman testify in such a manner that she would have exonerated petitioner. As the court noted in one of petitioner's *Marsden* hearings, counsel could not "force any information from his co-defendant," and petitioner has not shown ineffective assistance of counsel in this regard.

Petitioner claims that his counsel failed to "investigate" that petitioner wanted to "change his statement to the police." Petitioner also argues that his counsel failed to examine him in a manner at trial that would "explore statements that were not true." These conclusory allegations do not show ineffective assistance of counsel.

Petitioner contends that his attorney failed to cross-examine co-defendant Duran, whom petitioner claims could have exonerated him. Petitioner also claims that his attorney improperly failed to call investigator Lori Brown as a witness. Petitioner fails to state any facts as to how Duran's testimony could have assisted him, or what information Ms. Brown could have provided. Accordingly, petitioner has not shown that his counsel is ineffective.

Petitioner suggests that his counsel was ineffective because he failed to "disqualify himself" after petitioner requested new counsel. There is no legal basis for this contention. The court held three *Marsden* hearings, at which petitioner requested new appointed counsel. (See *People v. Marsden* (1970) 2 Cal.3d 1118.) At each hearing, the court inquired into petitioner's specific reasons to dismiss his counsel and questioned counsel, as required by law. (*People v. Mendez* (2008) 161 Cal.App.4th 1362, 1367-68.) The court denied petitioner's request each time, finding that no irreconcilable conflict existed in petitioner and counsel's relationship, and that petitioner's counsel was "an experienced attorney, [who was] doing a very, very competent job" representing petitioner. As shown by the petition and the attached transcripts of the *Marsden* hearings, petitioner's complaints about his counsel appear to stem from his unfamiliarity with the legal process and the

duties of counsel.

> Petitioner alleges that his counsel was ineffective because he allowed him to receive an "unlawful" sentence.  As discussed below, his sentence is lawful and this claim has no merit.

(ECF No. 1 at 98-99.)

Under Strickland v. Washington, 466 U.S. 668, 687 (1984), to demonstrate ineffective assistance of counsel, petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Id.  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id.  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  Hill v. Lockhart, 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the Strickland prongs.  See Strickland, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).  Conclusory allegations that counsel was ineffective do not warrant relief.  Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable -- a substantially higher threshold."  *Schriro [v. Landrigan]* 550 U.S. 465, 473 [2007].  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  It is through this doubly deferential lens that a federal habeas court reviews Strickland claims under the § 2254(d)(1) standard.  Knowles, 556 U.S. at 123, citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003).  This standard "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  Cheney v.

1  Washington, 614 F.3d 987, 995 (9th Cir. 2010).  Thus, the focus is on whether the state-court

2  decision holding that counsel was not ineffective constituted an "unreasonable application of

3  federal law[,] [which] is different from an incorrect application of federal law."  Harrington, 131

4  S. Ct. at 785.

5              Under § 2254(d), a habeas court must determine what arguments or
             theories supported or, as here, could have supported, the state
6           court's decision; and then it must ask whether it is possible
             fairminded jurists could disagree that those arguments or theories
7           are inconsistent with the holding in a prior decision of this Court.

8  Harrington, 131 S. Ct. at 786.

9              The Sacramento County Superior Court reasonably applied the Strickland standard in

10 evaluating petitioner's ineffective assistance of counsel claims.  Petitioner did not submit Lori

11 Brown's investigative report or her affidavit to show what facts petitioner alleges counsel failed

12 to introduce.  Petitioner did not demonstrate what testimony his co-defendants might have offered

13 that would have changed the outcome.  Co-defendant Duran chose not to testify, so counsel could

14 not question Duran, but in any event, all of the witnesses, including petitioner, testified in such a

15 way as to exonerate Duran.  Petitioner did not explain what testimony Duran might have offered

16 that would have changed the verdict against petitioner.  Co-defendant Tillman took the stand, and

17 petitioner's trial counsel cross-examined her.  (RT 754-61.)  Petitioner failed to demonstrate what

18 testimony counsel failed to elicit from Tillman, or how such testimony might have changed the

19 outcome, particularly in light of the victim's changed testimony concerning Tillman's

20 involvement in the crimes (RT 125-28; 140-42; 229-33.)  The state court properly found that trial

21 counsel had no duty to withdraw in response to petitioner's Marsden motions.

22             In addition, the victim, in fact, did testify at petitioner's sentencing hearing.  The victim

23 asked the court to be lenient in sentencing petitioner because the victim wasn't sure which one of

24 the Hispanic men did the beating, and "they didn't steal that much from [him]."  (RT 966.)  In

25 addition, petitioner's trial counsel argued that the court should impose the lower term sentence

26 due to the ten year enhancement required for the firearm possession charge.  (RT 966, 968.)

27 However, the trial court imposed the mid-term sentence based on the seriousness of the offense,

28 the threat of great bodily harm, the finding that the manner in which the crime was carried out

11

1   indicated planning, and the victim was particularly vulnerable.  (RT 969.)

2            Finally, petitioner failed to demonstrate that he suffered prejudice as a result of any

3   alleged errors by his trial counsel.  Counsel was faced with defending a client who was arrested at

4   the scene of the crime, found in possession of items stolen from the victim's home, and with

5   "apparent" blood on his hand and pants (RT 473-75; 545-48).  Petitioner took the stand at trial

6   and admitted he was present during the offenses.  (RT 621.)  Petitioner admitted that "they" gave

7   him a gun, which he held "just like they told [him]," although he claimed it wasn't loaded.  (RT

8   623.)  Petitioner admitted that he was listening while Tillman and the white guy were talking

9   about the lost credit cards, and admitted he took the credit cards from Tillman, although he

10  testified he thought the credit cards belonged to Tillman.  (RT 622-23; 653; 670.)  Tillman denied

11  giving petitioner the credit cards.  (RT 758.)  Officer Hatch testified that upon arrest, petitioner

12  had in his possession the victim's credit cards, more than three folding pocket knives, two sets of

13  hex sockets, and the keys and alarm fob to the victim's PT Cruiser.  (RT 371, 373, 376-77; 387-

14  88; 397.)  Given the strength of this evidence, petitioner has failed to show that there is a

15  reasonable probability that, but for counsel's alleged unprofessional errors, the result of the

16  proceeding would have been a different verdict.

17           For all of the above reasons, the state court's decision was not an unreasonable application

18  of federal law.  Thus, petitioner's first claim for relief should be denied.

19           B.  Ineffective Assistance of Appellate Counsel

20           Petitioner claims that appellate counsel "failed to properly allege all grounds for relief."

21  (ECF 1 at 11.)  After the appeal was denied, appellate counsel informed petitioner in writing that

22  counsel was "abandoning the representation on appeal," and instructed petitioner to follow the

23  rules of court by requesting a review in the California Supreme Court.  (ECF No. 1 at 11.)  Later,

24  in petitioner's argument concerning alleged errors in sentencing, petitioner states that the

25  "abandonment by appellate counsel does not make the sentencing legal."  (ECF No. 1 at 19.)

26  Petitioner includes no other specific errors by appellate counsel.

27           Respondent argues that petitioner's claim is vague and conclusory , and that petitioner

28  failed to demonstrate that the state court's rejection of this claim was objectively unreasonable.

12

1    The last reasoned rejection of this claim is the decision of the Sacramento County

2    Superior Court.  The state court addressed this claim as follows:

> Petitioner also argues that his appellate counsel was ineffective for failing to present certain "facts" in her opening brief, including that Duran was "exonerated," that Tillman received a lesser sentence, and that the gun petitioner held contained no bullets.  The principles governing a court's evaluation of whether trial counsel provided effective assistance also apply to appellate counsel.  (*In re Robbins* (1998) 18 Cal.4th 770, 810.)  Further, appellate counsel performs "properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim."  (*Id.*)  Here, the factual omissions alleged by petitioner do not establish that petitioner's appellate counsel was ineffective, and inclusion of these facts in appellate counsel's arguments would not have changed the outcome of the Court of Appeal's decision.  Petitioner also suggests that his appellate counsel was ineffective because she did not file a petition for review with the California Supreme Court following the denial of petitioner's appeal.  As indicated by the letter from appellate counsel to petitioner (attached to the petition), counsel withdrew her representation after the Court of Appeal issued its decision and advised petitioner of his requirement to timely seek review of the decision.

(ECF No. 1 at 99-100.)

The *Strickland* standards apply to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). The presumption that counsel acted reasonably is even stronger for appellate counsel because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance.  Id. at 1434.

Here, the state court properly found appellate counsel did not render ineffective assistance.  As the state court found, petitioner was sentenced to a term within the range set forth in the California Penal Code (ECF No. 1 at 100), and was not disproportionate under the Eighth Amendment (ECF No. 1 at 101).  Appellate counsel was not unreasonable in failing to include sentencing claims on appeal insofar as such claims were meritless, and failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.  Jones v. Barnes, 463 U.S. 745, 754 (1983) (appellate counsel must exercise professional judgment in selecting issues to be raised on appeal and does not have the duty to raise every claim suggested by a client).

////

1    The state court's denial of this claim was not an unreasonable application of federal law.

2    Thus, petitioner's second claim for relief should be denied.

3        C.  Cross-Examination Claim[3]

4        Petitioner claims, without supporting facts, that he was "denied confrontation &

5    compulsory process in his defense," and fails to identify witnesses relevant to this claim.  (ECF

6    No. 1 at 9.)  Respondent contends this claim is procedurally barred, but that the claim is vague

7    and conclusory and should be denied.

8        The Sacramento County Superior Court found that petitioner's claim, unsupported by

9    facts, failed to state a prima facie claim for relief.  (ECF No. 1 at 100.)

10       Petitioner's allegations in this regard are vague and conclusory and fail to state a

11   cognizable federal habeas claim.  See Gomez, 66 F.3d at 204 ("'[c]onclusory allegations which

12   are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James

13   v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  In any event, the record reflects that petitioner's trial

14   counsel cross-examined both the victim, as well as petitioner's co-defendant Tillman.  Although

15   co-defendant Duran did not take the stand, even petitioner testified that Duran was not present

16   during the offenses.  (RT 625-26.)  Petitioner identified no other witness in connection with this

17   claim.  Therefore, this claim is denied.

18   _____

19   [3]  Respondent argues that the California Superior Court's citation to In re Dixon, 41 Cal.2d at
     756, and Harris, 5 Cal. 4th at 813, constitutes a procedural bar which precludes this court from
20   considering the merits of petitioner's last three claims (numbered C & D herein).  The United
     States Supreme Court has held that, when a state law default prevents the state court from
21   reaching the merits of a federal claim, considerations of comity and concerns for the orderly
     administration of justice require a federal court to forego the exercise of its habeas corpus power
22   unless the habeas petitioner can demonstrate both cause for failing to meet the state procedural
     requirement and actual prejudice.  See Francis v. Henderson, 425 U.S. 536, 539-42 (1976);
23   Wainwright v. Sikes, 433 U.S. 72, 87 (1977); Ylst v. Nunnemaker, 501 U.S. 797, 800-01 (1991).
     However, a reviewing court need not invariably resolve the question of procedural default prior to
24   ruling on the merits of a claim.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); Franklin v.
     Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more
25   complex than the merits issues presented by the appeal, so it may well make sense in some
     instances to proceed to the merits if the result will be the same.").  Under the circumstances
26   presented here, this court finds that petitioner's remaining three claims can be resolved more
     easily by addressing such claims on the merits and therefore proceeds as if the claims are not
27   subject to a procedural default.

28

1      D. Petitioner's Sentencing Claims

2           Petitioner contends that his sixteen year sentence is disproportionate to the crime and to

3   his co-defendant Tillman's sentence of ten years, and constitutes cruel and unusual punishment.

4   (ECF No. 1 at 20.)  Petitioner also appears to argue that the court improperly found a number of

5   aggravating factors, and failed to stay petitioner's sentence for the enhancements.  Respondent

6   counters that this claim is procedurally barred and without merit.

7           The last reasoned rejection of this claim is the decision of the Sacramento County

8   Superior Court.  The state court addressed this claim as follows:

9                Petitioner argues, without asserting any facts, that the sentence he
               received is illegal and unlawful, and that it is disproportionate and
10             violates the Eighth Amendment.  This claim is barred because it
               fails to state a prima facie claim for relief, and it should have been
11             raised on appeal.  [Citations omitted.]  Further, petitioner's sentence
               was within permitted range provided by the Penal Code.  (Pen.
12             Code §§ 211, 213(a); 12022.53(b).)  He was sentenced to six years
               for the robbery charge and an additional ten years for use of a
13             firearm after a jury found these charges to be true.  Moreover,
               petitioner's sentence is not "disproportionate" and it does not
14             violate the Eighth Amendment.

15  (ECF No. 1 at 100-01.)

16          Petitioner's challenge to the sentence imposed for his convictions involves the

17  interpretation of state sentencing law.  Federal habeas corpus relief is unavailable for alleged

18  errors in the interpretation or application of state sentencing laws by either a state trial court or

19  appellate court.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("[t]he decision

20  whether to impose sentences concurrently or consecutively is a matter of state criminal procedure

21  and is not within the purview of federal habeas corpus); Hendricks v. Zenon, 993 F.2d 664, 674

22  (9th Cir. 1993) ("claim regarding merger of convictions for sentencing is exclusively concerned

23  with state law and therefore not cognizable in a federal habeas proceeding.").  So long as a

24  sentence imposed by the state courts "is not based on any proscribed federal grounds such as

25  being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties

26  for violation of state statutes are matters of state concern."  Makal v. State of Arizona, 544 F.2d

27  1030, 1035 (9th Cir. 1976).  See also Robinson v. Schriro, 595 F.3d 1086, 1103 (9th Cir. 2010)

28  ("Federal habeas corpus relief does not lie for mere errors of state law, but only for federal

                                              15

1   constitutional violations.")  Accordingly, the Ninth Circuit has specifically refused to consider on

2   habeas review claims of erroneous application of state sentencing law by state courts.  See, e.g.,

3   Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989) (holding that whether assault with a deadly

4   weapon qualifies as a "serious felony" under California's sentence enhancement provisions is a

5   question of state sentencing law and does not state a federal constitutional claim); see also Souch

6   v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (petitioner's state law sentencing claims found

7   insufficient to merit federal habeas relief).

8        Moreover, the United States Supreme Court has held that the Eighth Amendment includes

9   a "narrow proportionality principle" that applies to terms of imprisonment.  See Harmelin v.

10  Michigan, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).  See also Taylor v. Lewis, 460

11  F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal court to the

12  proportionality of particular sentences are "exceedingly rare."  Solem v. Helm, 463 U.S. 277,

13  289-90 (1983); see e.g., Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004) (25-year-to-life

14  sentence under California's Three Strikes law for his third shoplifting offense was grossly

15  disproportionate to the crimes committed).  "The Eighth Amendment . . . forbids only extreme

16  sentences that are 'grossly disproportionate' to the crime."  Harmelin, 501 U.S. at 1001

17  (Kennedy, J., concurring) (citing Solem v. Helm).

18       On federal habeas review, the question "is not whether the state sentencer committed

19  state-law error," but whether the sentence imposed on the petitioner is "so arbitrary or capricious

20  as to constitute an independent due process or Eighth Amendment violation."  Richmond v.

21  Lewis, 506 U.S. 40, 50 (1992).  Petitioner failed to demonstrate that the sentence imposed in this

22  case was arbitrary or capricious or that it constitutes cruel and unusual punishment under the

23  Eighth Amendment.  His sixteen year sentence does not fall within the type of "exceedingly rare"

24  circumstance that would support a finding that his sentence violates the Eighth Amendment.  The

25  sixteen year sentence is not outside statutory limits for the crimes committed and is not grossly

26  out of proportion so as to violate the Eighth Amendment.  Accordingly, petitioner is not entitled

27  to federal habeas corpus relief on this sentencing claim.

28  ////

1  VI.  Conclusion

2          For all of the above reasons, the undersigned denies petitioner's application for a writ of

3  habeas corpus.

4          Before petitioner can appeal this decision, a certificate of appealability must issue.  28

5  U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C.

6  § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional

7  right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability

8  indicating which issues satisfy the required showing or must state the reasons why such a

9  certificate should not issue.  Fed. R. App. P. 22(b).

10         For the reasons set forth above, the undersigned finds that petitioner has not made a

11  showing of a substantial showing of the denial of a constitutional right.

12         Accordingly, IT IS HEREBY ORDERED that:

13         1.  Petitioner's application for a petition for writ of habeas corpus is denied; and

14         2.  The court declines to issue the certificate of appealability referenced in 28 U.S.C.

15  § 2253.

16  Dated:  March 27, 2014

17

18  /mung2082.157                                  KENDALL J. NEWMAN
                                                   UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28